## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **18-02936-jw**

## ORDER

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/19/2018**



/s/ John E. Waites

US Bankruptcy Judge
District of South Carolina

Entered: 11/19/2018

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 18-02936-jw |
| | Chapter 13 |
| Rudolph Norwood Lloyd, | **ORDER** |
| Debtor. | |

This matter comes before the Court on the Objection ("Objection") filed on September 25, 2018 by Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A ("Wilmington Savings") to the Modified Chapter 13 Plan filed by Rudolph Norwood Lloyd ("Debtor") on August 22, 2018. In the modified plan, Debtor proposes to value Wilmington Savings' secured claim in the amount of $26,000.00. No other objections to the Plan were made and a hearing was held attended by counsel for Debtor and counsel for Wilmington Savings. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157. Pursuant to Fed. R. Civ. P. 52, as applicable to this proceeding under Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## **FINDINGS OF FACT**

1. On June 6, 2018, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.

2. On July 2, 2018, Debtor filed schedules, statements, and a chapter 13 plan.

3. According to Debtor's plan, Debtor possesses a one-third equitable interest in real property known as 609 Rego Lane, Moncks Corner, SC 29461, Berkeley County 144-00-01-057

---

[1] To the extent the following findings of fact are conclusions of law, they are so adopted; to the extent the following conclusions of law are findings of fact, they are so adopted.

1

("Lot 057"). Debtor's Schedule A/B indicates that Debtor lives in a 1978 Southern mobile home ("Mobile Home") that is located on Lot 057.

4.  It is undisputed that the Mobile Home located at 609 Rego Lane, Moncks Corner, South Carolina 29461 is Debtor's principal residence and is part of the collateral securing the claim of Wilmington Savings.

5.  The titled owner of record of the Mobile Home is not Debtor, but is Debtor's ex-wife, Dessirene G. Lloyd ("Ex-wife"). According to Debtor's Response to the Objection filed September 27, 2018, the Certificate of Title on record at the South Carolina Department of Motor Vehicles does not show that the Mobile Home has been retired or de-titled.[2]

6.  On August 14, 2018, Wilmington Savings filed a proof of claim, asserting a claim in the amount of $73,211.83 secured by real estate described as "609 Rego Lane, Moncks Corner, South Carolina 29461."

7.  Wilmington Savings attached to its proof of claim a Disclosure Statement, Note, and Security Agreement ("Loan") in the amount of $83,875.12 executed by Debtor and his Ex-wife on September 5, 2006 in favor of CitiFinancial, Inc. and a Mortgage executed simultaneously by Debtor, Debtor's Ex-wife, and Oralee Blakes ("Debtor's Mother"). The Mortgage conveyed a security interest in the real property[3] as described in Exhibit A to the Mortgage.

---

[2] De-titling refers to a statutory procedure by which a mobile home is deemed to be part of the real property on which it is located, losing its classification as personal property.

[3] Two addresses (609 and 611 Rego Lane, Moncks Corner, SC 29461) are associated with the single parcel (TMS#144-00-01-057) and, at the time of execution of the Note and Mortgage, the owners of record of the subject real property were Debtor, Debtor's Ex-wife, and Debtor's Mother. Since that time, Debtor has divorced, and Debtor's Mother died intestate. There is no mention of Debtor's Mobile Home or of "fixtures" in the Mortgage document or Exhibit A thereto; however, the habendum clause includes:

> [I]mprovements now or hereafter erected on the property, and all easements, rights, appurtenances, and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

2

8. Exhibit A reads "ALL that certain piece, parcel, or lot of land situate, lying, and being in the County of Berkeley, State of South Carolina; measuring and containing One (1.00) acre, more or less… this being the same property conveyed to Oralee Blakes, Rudolph N. Lloyd and Dessirene G. Lloyd from Oralee Blakes herein by Deed dated 6/15/06 and recorded 6/21/06 in Deed Book 5716 at Page 273." There is no Lot number identified in Exhibit A.

9. With its proof of claim, Wilmington Savings filed an Assignment of Mortgage demonstrating that CitiFinancial, Inc. assigned the Loan and Mortgage to Wilmington Savings on October 2, 2017.

10. On August 22, 2018, Debtor filed amended statements, schedules, and a chapter 13 plan ("Plan").

11. Debtor's Schedule A/B Part 1.1 was amended to adjust the valuation of Debtor's residence (609 Rego Lane, Moncks Corner, SC 29461, Berkeley County 144-00-01-057) to $26,000 based on an appraisal ("2018 Appraisal") obtained by Debtor's family members with an effective date of August 18, 2018. Debtor has not submitted the 2018 Appraisal as evidence to the Court.

12. Debtor's Schedule A/B Part 1.2 was amended to adjust the current value of a separate vacant lot 144-00-01-066 ("Lot 066") from $35,000 to $15,000, in which Debtor owns a one-half equitable interest.

13. Debtor's Schedule A/B Part 4 was amended by the addition of a separate entry and valuation for a second mobile home, a 1991 Fleetwood, on the same parcel as Debtor's residence but with an address of 611 Rego Lane, valued at $7,900, in which Debtor owns a one-third interest.

14. Debtor did not list the Mobile Home in Part 4.1 of the amended Schedule A/B.

15. An Origination Appraisal obtained for the Loan dated September 5, 2006 ("2006 Appraisal") was presented into evidence, which values both parcels, Lot 057 and Lot 066, and a mobile home with Serial Number S-1227. According to Debtor's schedules and the proof of claim, S-1227 is the serial number of the Mobile Home. The 2006 Appraisal states that an addition was built in 1992, including a front screen porch and rear deck. The diagram depicts an addition as measuring 36.3 feet (36.3') by 16.1 feet (16.1'); a screen porch as measuring 16.1 feet (16.1') by 9.2 (9.2'); and a deck as measuring 5 feet (5') by 8 feet (8'). However, the Appraisal notes that the manufactured home is "Not Permanently Affixed" to a foundation but is on "CONC BLOCKS & TIED DOWNS." It also indicates that it is connected to water and electricity lines. Additionally, the "No" box is checked in response to the question as to whether the manufactured home "has been converted to real property."

16. A photograph of the Mobile Home from the Berkeley County Assessor's Office, which taxes the Mobile Home as personal property, was introduced at the hearing and comports with the diagram of the structure in the 2006 Appraisal.

17. Prior to the filing of Debtor's chapter 13 petition, the parties were involved in a foreclosure proceeding before the Master-in-Equity for the Ninth Judicial Circuit in Berkeley County. An Order and Judgment of Foreclosure ("Foreclosure Order") against the parcel described in Exhibit A of the Mortgage, determined by the Master-in-Equity to be Lot 057, and the Mobile Home was entered in that Court on April 5, 2017.

18. Paragraph 21 of the Foreclosure Order makes a finding of fact that "the parties intended that the subject loan be secured by the real property and the 1978 Southern Mobile, serial number S1227, located on the real property."

4

19. Paragraph 23 of the Foreclosure Order makes a finding of fact that the "1978 Southern Mobile Home, Serial Number S1227, which is attached to the real property, as well as the land described in the mortgage, secure the [Wilmington Savings'] loan."

20. Paragraph 29(b) of the Foreclosure Order makes a finding of fact that United Financial Services, Inc., who was named a party to that action by virtue of being listed as a lienholder on the certificate of title for the Mobile Home, no longer has an interest in or lien against the Mobile Home.

21. The Foreclosure Order makes a conclusion of law that "[b]ased on the allegations in the Complaint and the evidence presented, I hereby order [Wilmington Saving's] loan is also secured by the 1978 Southern Mobile Home, Serial Number S1227, located on the subject real property."

22. While Debtor was a party to the underlying foreclosure action, the Foreclosure Order indicates that Debtor was in default, and it does not appear he participated in the litigation.

23. No timely appeal of the Foreclosure Order was taken.

24. The title to the Mobile Home has not been retired pursuant to S.C. Code § 56-19-500, *et seq.*.[4]

25. On September 25, 2018, Wilmington Savings filed the Objection to Debtor's request in the Plan to value its claim at $26,000.00, to which Debtor filed a Response on September 27, 2018.

---

[4] In 2003, South Carolina enacted the De-titling Statute, S.C. Code § 56-19-500, *et seq.*, of the South Carolina Code of Laws ("S.C. De-titling Statute" or "Statute"). Through compliance with the S.C. De-titling Statute, owners of manufactured homes may de-title their homes and make them, as a matter of South Carolina law, part of the real property on which they are located. There are advantages to the real property classification for the owner of a manufactured home, including increased availability of favorable financing, equitable taxation, stronger protections for heirs, equitable safeguards upon default, and a greater possibility of homestead exemptions. *Titling Homes as Real Property*, National Consumer Law Center, https://www.nclc.org/images/pdf/manufactured_housing/cfed-titling-homes.pdf (last visited November 6, 2018).

5

26. On October 2, 2018, the parties filed a joint statement of dispute asserting that the issue to be determined by the Court is whether 11 U.S.C. § 1322(b)(2), which prohibits the modification of certain claims, is applicable.

27. A hearing on the Objection to Confirmation was held on October 4, 2018 during which the parties presented arguments on Wilmington Savings' Objection to the Plan. Debtor did not attend the hearing and no testimony was provided by either party. The following exhibits were offered and admitted into evidence without objection at the outset of the hearing:

   a. Copy of S.C. Code § 56-19-500, *et seq.*, as Exhibit 1.

   b. Copy of a photograph of the Mobile Home from the Berkeley County Assessor's website, as Exhibit 2.

   c. Copy of the 2006 Appraisal, as Exhibit 3; and

   d. Copy of the Foreclosure Order.

## LEGAL STANDARDS

In its Objection, Wilmington Savings contends that 11 U.S.C. § 1322(b)(2) prohibits Debtor from modifying its claim because the claim is secured by a first mortgage lien on the real property, Lot 057 and the Mobile Home, which serve as Debtor's primary residence. Section 1322(b)(2) of the Bankruptcy Code provides: "Subject to subsections (a) and (c) of this section, the plan may … modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." In enacting this provision, Congress intended to protect residential mortgagees that did not have other collateral. *See Hearings Before the Subcommittee on Improvements of the Judicial Machinery of the Senate Comm. On the Judiciary, 95th Cong., 1st Sess.* 652–53, 703, 707, 714–15, 719–21 (1977); *see also Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)

6

(Stevens, J., concurring) ("[Section 1322(b)(2)'s] legislative history indicate[s] that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market.") The protection is predicated upon three criteria: (1) the claim must be secured by real property, (2) that is the debtor's principal residence, and (3) the claim must not be secured by any other property or collateral.[5] *See* § 1322(b)(2).

Debtor asserts that he may value Wilmington Savings' claim because the Mobile Home, despite being his primary residence, is not included in the property description of Exhibit A of the Mortgage and is not a fixture, and thus does not constitute real property. South Carolina courts employ a common law test that considers the following factors to determine whether a mobile home is personal property or real property by virtue of becoming a fixture: (1) mode of attachment; (2) character of the structure or article; (3) the intent of the parties making the annexation; and (4) the relationship of the parties." *In re Avery*, 7 B.R. 28, 31 (Bankr. D.S.C. 1980) (citing *Carrol v. Britt,* 227 S.C. 9, 86 S.E.2d 612 (1955)); *see also In re Rebel Mfg. and Marketing Corp.* 54 B.R. 674 (Bankr. D.S.C. 1985).

## CONCLUSIONS OF LAW

### FIRST ISSUE

**Whether the S.C. De-titling Statute pre-empts the common law test for determining when a mobile home is sufficiently affixed to real property to be deemed real property.**

Debtor first argues that in enacting the S.C. De-titling Statute, S.C. Code 56-19-500, *et seq.,* of the South Carolina Code of Laws, the S.C. Legislature intended to preempt the common

---

[5] The third criterion is important here – if the Court were to determine that Wilmington Savings' loan is also secured by the Vacant Lot, which is *not* Debtor's principal residence, then § 1322(b)(2) would be inapplicable. Likewise, if the Court were to determine that the Mobile Home is personal property, Wilmington Savings' loan would be secured by other collateral separate from the real property on which the Mobile Home sits, and the provision would be inapplicable.

7

law test for determining whether a manufactured home was so affixed to real property so as to be treated as part of the land for purposes of a mortgage loan on the real property. The operative section of the Statute provides that:

> An owner of a manufactured home may affix the home to real property by:
>
> (1) installing the home in accordance with the required installation standards and removing the wheels, axles, and towing hitch; and
>
> (2) filing with the register of deeds or clerk of court, as appropriate, for the county in which the manufactured home is located the Manufactured Home Affidavit for the Retirement of Title Certificate in the form prescribed in this article together with proof of ownership as evidenced by a copy of the most recent deed of record or other instrument vesting title, and paying the filing fee required for affidavits by Section 8-21-310. S.C. CODE ANN. § 56-19-510(A) (2006).

In addition, under the Statute:

> (1) "Affixed" means that the manufactured home is installed in accordance with the state required installation standards, with wheels, axles, and towing hitch removed, and with the owner of the home having an intention that the manufactured home becomes an improvement to the real property whereon it is situated as evidenced by the filing of the affidavits provided in this article. The filing of the affidavits provided for in this article is conclusive proof of the intent to affix the manufactured home to real property. S.C. CODE ANN. § 56-19-500(1) (2006).

Correspondingly, Debtor argues that his failure to file the required affidavits should be accepted as conclusive evidence that the Mobile Home was *not* affixed at the time of the loan, thus precluding further examination and ending the inquiry.

The legislative history of the Statute indicates that it was enacted primarily to benefit the owners of manufactured homes by improving their ability to obtain financing, not to preempt the common law test. The S.C. Legislature set forth its overriding purpose in Section 1 of the 2003 South Carolina Sessions Law Act 88 (H.B. 3909):

8

> The General Assembly finds that there are circumstances where it is advantageous to classify manufactured homes affixed to real property as real property so as to allow for the granting of a mortgage on the real property with the manufactured home being subject to the mortgage. Further, there does not exist a uniform system for retiring the title certificate on a manufactured home, and, as a consequence, citizens are frequently denied opportunities to secure financing for their manufactured homes from federally guaranteed sources. To ameliorate the difficulties resulting from the absence of a uniform procedure, the General Assembly intends to provide a uniform procedure for retiring the title certificate for a manufactured home affixed to real property and to provide that manufactured homes affixed to real property in specified circumstances may be subject to a mortgage on the real property. By adoption of a uniform system for the retirement of title certificates on manufactured homes, the General Assembly intends that other statutory and regulatory provisions affecting manufactured housing remain unchanged. Motor Vehicles, 2003 South Carolina Laws Act 88 (H.B. 3909).

The Statute appears to establish a procedure that an owner of a manufactured home *may* elect to follow to ensure that his home is treated as affixed. However, a reading of the Statute's plain language does not indicate that the reverse is true: if an owner does not follow the procedure, then the home may not otherwise be affixed or considered affixed to real property. For these reasons, the Court finds that the common law test, as set forth in South Carolina case law and previously relied upon by this Court, may still be applicable in situations where the Statute is not followed. Therefore, the Statute cannot be seen to preempt the common law test in this case. Nonetheless, the failure to follow the statutory procedure may be significant in the Court's determination of the parties' intent to affix a manufactured home to real property at the time of a mortgage loan.

9

## SECOND ISSUE

**Whether the Mobile Home is sufficiently affixed to the real property, Lot 057, such that 11 U.S.C. § 1322(b)(2) prevents Debtor from modifying Wilmington Savings' rights as the holder of a secured claim in this case.**

    I.    **Is the Mobile Home sufficiently affixed to the real property, Lot 057, to be deemed real property under common law?**

Generally, under South Carolina law, mobile homes are treated as personal property and liens on mobile homes are required to be recorded on the certificate of title to be perfected. *See* S.C. CODE ANN. §§ 56-19-650; 56-19-10(39); 36-9-303; *see e.g., City of N. Charleston v. Claxton*, 315 S.C. 56, 431 S.E.2d 610 (Ct. App. 1993). However, if a mobile home is sufficiently attached to real property such that it becomes a fixture, the mobile home may be subject to the mortgage encumbering the real property. *See In re Rebel Manufacturing and Marketing Corp.*, 54 B.R. 674, 675 (Bankr. D.S.C. 1985) ("It has long been the law in South Carolina that fixtures annexed to land which is encumbered with a mortgage inure to the benefit of the real property mortgage.") "The question of whether or not a mobile home is sufficiently affixed to real property to be 'real property' afforded the protection of § 1322(b)(2) is a question of state law." *In re Bell*, No. 08-00409-JW, slip op. at 5 (Bankr. D.S.C. Apr. 22, 2008); *see also In re Ennis*, 558 F.3d 343 (4th Cir. 2009) (applying Virginia state law to determine whether a mobile home was real estate for purposes of treatment under § 1322(b)(2)). The test for determining whether a mobile home continues to be personal property or becomes a fixture considers the following factors: (1) mode of attachment; (2) character of the structure or article; (3) the intent of the parties making the annexation; and (4) the relationship of the parties." *In re Avery*, 7 B.R. 28, 31 (Bankr. D.S.C. 1980) (citing *Carrol v. Britt,* 227 S.C. 9, 86 S.E.2d 612 (1955)); *see also In re Rebel Mfg. and Marketing Corp.* 54 B.R. 674 (Bankr. D.S.C. 1985).

As previously mentioned, the parties provided no testimony and very little documentary evidence at the hearing held on October 4, 2018. Therefore, the Court makes the following findings based upon the evidence that has been provided to the Court.[6]

**Mode of Attachment.** First, regarding the mode of attachment, the Mobile Home appears to be attached to the real property by a block pier foundation, which is noted in the 2006 Appraisal. The Appraisal further notes that the Mobile Home was "not permanently affixed" and had not been "converted to real property." Because a block pier foundation is not a type of permanently affixed foundation, this factor weighs in favor of Debtor.

**Character of Structure.** Second, as to the character and structure of the Mobile Home, it is connected to water and electricity lines, and appears to have been improved with a large addition, a screened front porch, and a rear deck, according to the 2006 Appraisal. While it does not appear that any trees or landscaping would block removal of the Mobile Home from the property based on the photograph provided, the existing improvements suggest that it may be difficult to remove the Mobile Home without causing damage to the structure. This factor weighs in favor of Wilmington Savings.

---

[6] The Court first notes that Debtor was in default in the state court foreclosure action when the Foreclosure Order was entered, and it is unclear if any of the other defendants to the foreclosure action in fact actually litigated issues related to the Mobile Home in that case. Therefore, to the extent that Wilmington Savings is seeking to invoke the doctrine of collateral estoppel as to the Foreclosure Order, the Court finds it has not sufficiently demonstrated that the issue of whether the Mobile Home was affixed to the real property at issue was actually litigated in the state court. *See In re Raynor*, 922 F.2d 1146, 1149 (4th Cir. 1991) ("[A]n indispensable requirement of res judicata (more precisely, issue preclusion and collateral estoppel) is actual litigation of the issue. . . . To preclude a debtor from litigating [a dispositive issue], the record of the [prior] case . . . must show that the issue was actually litigated and determined by a final valid judgment in an earlier proceeding and that it was necessary to the decision. Moreover, the bankruptcy court must determine whether the issue was actually litigated 'with particular care.'" (quoting *Combs v. Richardson*, 838 F.2d 112, 113 (4th Cir. 1988))).

Further the Court notes that the Foreclosure Order is unclear as to its findings. The Foreclosure Order notes that the Mobile Home is "attached" to the real property (without reference to the extent the Mobile Home is attached) and directs the South Carolina Department of Motor Vehicles to issue a new certificate of title "to the successful purchaser at the foreclosure sale or shall detitle and retire said Certificate of Title as necessary." The latter statement appears to suggest that the Mobile Home remains personal property as it directs that a new certificate of title may be issued. Therefore, the Court cannot conclude that the state court determined in the Foreclosure Order that the Mobile Home was sufficiently affixed to constitute being a part of the real property.

**Intent of the Party Making the Annexation.** Absent testimony or documentary evidence to the contrary, the Court proceeds with the presumption that Debtor caused the Mobile Home to be placed on the real property. The Court presumes this is true because the Mobile Home's existence on the land and its additions appear to pre-date the Loan and Mortgage according to the 2006 Appraisal. Therefore, the Court must determine Debtor's intent to affix the Mobile Home at the time it was placed on the real property and at the time Debtor conveyed a security interest in the real property to the lender. *See In re Avery*, 7 B.R. 28 (Bankr. D.S.C. 1980) (reasoning that where plaintiffs sold real estate to debtors, the Court considered the plaintiffs' intent at the time the mobile home was placed on the real estate and at the time of the conveyance of the real estate from plaintiffs to debtors).

The only evidence presented relates to when Debtor granted a mortgage lien on the real property in 2006, and it does not appear that Debtor intended to treat the Mobile Home as real property at that time. The Court draws this conclusion because Debtor did not specifically grant a lien to the lender on the Mobile Home in the Mortgage or any other loan document submitted into evidence. While the Mortgage contains a clause providing that "all improvements now or hereafter erected on the property" are included within the definition of the "Property" covered by the Mortgage, this Court has previously held that similar language in an habendum clause is standard form language in a mortgage and is not specific enough on its own to find that there was an agreement that a mobile home is a fixture to the real property. *In Re Bell*, No. 08-00409-JW, slip op. at 7–8 (Bankr. D.S.C. Apr. 22, 2008) (citing *In re Magee*, No. 99-03418-B, slip op. at 5). In addition, "erect" is defined in Black's Law Dictionary as meaning "to construct" or "to establish." BLACK'S LAW DICTIONARY 562 (7th ed. 1999). The Mobile Home could not be considered

12

"erected" on the real property because it was manufactured elsewhere and it appears to have been moved onto the property prior to the Mortgage.

Likewise, there is no mention of the Mobile Home or any "fixtures" in the legal descriptions contained in the Note or Mortgage or other Loan closing documents.[7] Moreover, the 2006 Appraisal, which appears to include the Mobile Home in the valuation, does not bear Debtor's acknowledgement, and it did not deem the Mobile Home a "fixture." In addition, although the Court does not consider the S.C. De-titling Statute to prescribe the exclusive way for a mobile home to be considered part of real property, it noteworthy that Debtor did not follow the statute's procedure in place at the time to de-title the Mobile Home. *See In Re Bell*, No. 08-00409-JW, slip op. at 7–8 (Bankr. D.S.C. Apr. 22, 2008) (noting that where a debtor did not follow the statutory procedure to de-title the home, the Court had to apply the common law test to determine whether a mobile home constituted real property). The statute was enacted three years prior to Debtor's execution of the Loan documents, but it appears to have had no effect on the lender's drafting of those documents because they do not mention the Mobile Home. In addition, Wilmington Savings has not presented evidence of retirement of title to the Mobile Home. Therefore, based on the evidence presented, the Court concludes that Debtor intended that the Mobile Home remain personal property. This factor favors Debtor.

**Relationship.** Finally, it appears that Debtor did not deal directly with Wilmington Savings, the current holder of the Mortgage, in his purchase of the Mobile Home or the Mortgage of the property. Thus, this factor is neutral.

After considering all the factors, it appears that the common law test favors Debtor.

---

[7] The parties have not provided a copy of the deed conveying the property to Debtor or a copy of the plat attached to the 2006 Appraisal.

13

The ultimate burden of proof regarding a motion to value a secured claim and the confirmation of a chapter 13 plan is on the debtor by the preponderance of the evidence. *See In re Barnes*, 378 B.R. 774, 777 (Bankr. D.S.C. 2007) (in addressing a § 1325(b) objection to confirmation, the Court noted that the debtor bears the ultimate burden of proof on the confirmation of a chapter 13 plan and has the ultimate burden to demonstrate by the preponderance of the evidence compliance with § 1325(b)); *In re Brown,* 244 B.R. 603, 607–10 (Bankr. W.D. Va. 2000) (holding that for an objection to valuation in a proposed chapter 13 plan, the burden is on the debtor by the preponderance of the evidence); *In re Maplethorpe*. 569 B.R. 157, 159 (Bankr. E.D. Mich. 2017) (applying the preponderance of evidence standard to a § 506(a)(1) valuation).

The record in this matter was limited as neither party presented testimony and presented only limited documentary evidence. Nonetheless, based on the record, the Court finds that Debtor has met his burden by the preponderance of the evidence and the Mobile Home is not sufficiently affixed to real property to be deemed to be real property. As such, the Court finds that the Mobile Home remains personal property and is separate collateral for the Loan. Therefore, Debtor has met his burden to demonstrate that § 1322(b)(2) is not applicable in this matter and Wilmington Saving's secured claim is subject to valuation under § 506(a).

Because both parties only focused on whether the Mobile Home was sufficiently affixed to be deemed real property at the hearing, the Court received no evidence regarding the present value of Wilmington Savings' claim.[8] Therefore, a further hearing will be necessary for the parties to address the value of the Mobile Home, which is hereby scheduled for **December 20, 2018 at**

---

[8] While Debtor has asserted the claim's value is $26,000 based on an alleged appraisal that his family recently obtained, this appraisal was not presented into evidence and no testimony was provided by Debtor or any other party regarding the value of the property.

14

**9:30 AM at the United States Bankruptcy Courtroom, King and Queen Building, 145 King Street Room 225, Charleston, SC 29401.**[9]

### CONCLUSION

For the foregoing reasons, the Court overrules Wilmington Savings' Objection that 11 U.S.C. § 1322(b)(2) prohibits the valuation of its secured claim. The Court hereby sets a further hearing on the valuation of Wilmington Savings' claim for **December 20, 2018 at 9:30 AM at the United States Bankruptcy Courtroom, King and Queen Building, 145 King Street Room 225, Charleston, SC 29401.**

**AND IT IS SO ORDERED**.

---

[9] This hearing may be removed from the calendar upon the parties indicating to chambers that the valuation dispute between the parties is resolved or mediation is desired.

15